UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHIQUITA ANN MAGEE                                          CIVIL ACTION

VERSUS                                                     NO. 16-2234

CAROLYN W. COLVIN, ACTING                                  SECTION "H" (2)
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Plaintiff, Chiquita Ann Magee, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act. 42 U.S.C. §§ 423, 1382c. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I.    PROCEDURAL HISTORY

Magee filed her applications for DIB and SSI on July 30, 2013, alleging disability beginning October 10, 2011, due to a lumbar injury, chronic knee pain and a head injury. (Tr. 161, 171). After her claims were denied at the agency level, Magee requested a hearing before an Administrative Law Judge (ALJ), which was held on August 26, 2014. (Tr. 25-52). The ALJ issued a decision denying the applications on December 8, 2014. (Tr. 12-20). After the Appeals Council denied review on February 1, 2016, the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1-6).

Plaintiff filed a timely memorandum of facts and law.  Record Doc. No. 13.

Defendant filed a timely reply memorandum.  Record Doc. No. 14.

## II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ erred by failing to consider a closed period of disability.

B.   The ALJ erred by failing to analyze Magee's ability to obtain and maintain employment.

C.   The ALJ erred by failing to consider the side effects of plaintiff's medication.[1]

D.   The ALJ erred by concluding that Magee's receipt of unemployment benefits and ability to perform limited household chores mean that she is capable of working full time.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Plaintiff has not engaged in substantial gainful activity since October 10, 2011, her alleged onset date.  Her attempts at working in 2012 did not amount to substantial gainful activity.

2.   Magee has severe impairments of obesity, osteoarthritis and allied disorders (right knee), degenerative disc disease (disorders of back–discogenic and degenerative), and sprains and strains–all types.

3.   She has the residual functional capacity to perform light work, except that she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs.  She should avoid climbing ladders, ropes and scaffolds; working with moving, hazardous and dangerous machinery; working at unprotected heights; and commercial driving.

---

[1] Plaintiff's statement of four errors at page 4 of her memorandum lists as Error No. 3 that the ALJ erred by finding that Magee has the residual functional capacity to perform a reduced range of light work. Record Doc. No. 13, at p. 4.  However, Magee did not brief this argument and it is deemed abandoned.  Hardman v. Colvin, 820 F.3d 142, 145, 152 (5th Cir. 2016).  Instead, in the body of her memorandum, Magee briefed a different Error No. 3, Record Doc. No. 13, at pp. 7-8, which was not listed in her statement of errors, i.e., that the ALJ failed to consider the side effects of plaintiff's medication.   This report and recommendation addresses that alleged error.

2

4.      The objective evidence does not substantiate the severity of Magee's alleged limitations.   Although her medically determinable impairments could reasonably be expected to cause the alleged symptoms, her allegations of severe functional limitations are only partially credible.

5.      Plaintiff is unable to perform her past relevant work as a direct support worker–health care, mental retardation aide.

6.      Considering her age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Magee can perform, such as cashier, sales attendant and fast food worker.

7.      She has not been under a disability from October 20, 2011, through December 8, 2014, the date of the ALJ's decision.

(Tr. 14-16, 18-21).

IV.     ANALYSIS

A.      Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may

3

not reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. <u>Halterman ex rel. Halterman v. Colvin</u>, 544 F. App'x 358, 360 (5th Cir. 2013) (citing <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000)); <u>Stringer</u>, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Luckey v. Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[2]The relevant law and regulations governing claims for DIB and SSI are identical.  <u>Carmon v. Barnhart</u>, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994)); <u>Baltierra v. Chater</u>, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1467 (5th Cir. 1989)); <u>Bryan v. Halter</u>, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing <u>Haywood</u>, 888 F.2d at 1467).

4

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2014).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[3]  Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F.  App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

Magee testified that she last worked in August 2012.  She stated that she had been working on restricted duty because of her back injuries, but that her employer released her because it no longer had any jobs she could perform with her restrictions.  She testified that her doctors had told her not to lift anything between 10 and 25 pounds because "my lower back will go back out again."  (Tr. 31).

Plaintiff said she experiences sharp pain from her low back up her spine and down her right leg if she sits for more than one hour, causing a spasm that lasts about two minutes. (Tr. 31-32).  She testified that, if she stands for more than one hour, her lower back, right

6

leg and right knee hurt and her right foot swells.  She stated that, when her back hurts, her body becomes very stiff, she feels "a cracking" when she turns, and she has to hold onto something to go from sitting to standing.

Magee said her neck pain began after she fell backwards and hit the back of her head.  She testified that x-rays showed no damage and that she was given a muscle relaxer and told to rest.  (Tr. 32).  She stated that, three days before the hearing, she began having muscle spasms from her neck down to her lower back, pain from her lower back into her left arm, and numbness in her left hand.  (Tr. 32-33).

Plaintiff testified that she was diagnosed with arthritis in her knee in 2006 and received pain medication.  She said she returned to the doctor in 2010 because her knee hurt and she could not kneel on it.  She stated that an MRI showed a meniscus tear with cysts growing around it.  (Tr. 33).  She said she cannot kneel on that knee, she feels unbearable pressure and popping in the knee when walking, and she has to sit to relieve the pain.

Magee testified that, on a typical day, she wakes up at 5:00 a.m. to get her children ready for school.  She stated that the children dress themselves.  She said she cleans house at night so the children can help.  She testified that she takes her pain and muscle relaxer medications after the children go to school, then sits and reads.  She said she feels sleepy about an hour later and must take a nap.  Plaintiff stated that she does not take her prescription medication if she has to drive any distance because she would fall asleep while driving.  She said she usually shops at a store near her home.  (Tr. 34).  She testified that

she usually walks three or four laps in the yard around her mobile home daily to get a little exercise and prevent her legs from locking up.  (Tr. 35).

Plaintiff explained that, after her alleged onset date in October 2011, she worked some light duty jobs until they were completed, after which her employer had no more jobs that did not involve lifting, bending or reaching.  (Tr. 35-36).  She said she was a direct support worker, providing services for mentally challenged adults and children, some of whom were in wheelchairs and could not walk.  She stated that she normally lifted people out of wheelchairs, but did not do so when on light duty.  She testified that light duty consisted of guiding clients to make sure they ate, showing them how to clean or cook small meals, and taking them to events, such as the special Olympics.  (Tr. 36).

Magee said she received unemployment compensation after she was laid off until December 28, 2013.  She stated that her 12-year-old son and 16-year-old daughter live with her, and that her only sources of income are child support and her son's Social Security benefits.  She said she drives three to four times per week to a school event, doctor's appointment or grocery store, or to pay a bill.  She testified that she takes her children shopping with her.  (Tr. 37).  She stated that she reads poetry, novels, newspapers and magazines, and usually reads about three books per month.

Plaintiff testified that her back problems began in 2011 and that she first received treatment for her back in 2012 at Ochsner Hospital in Kenner, Louisiana.  (Tr. 38).  She said she had an MRI of her back in 2006 and 2013.  She stated that she goes to Leonard

Chabert Hospital in Houma, Louisiana about every six months and that no doctor has ever suggested surgery for her knee, neck or back.

Magee said she started taking gabapentin[4] about two years earlier and that she previously took 800 milligrams of ibuprofen for pain. (Tr. 39). She stated that she takes gabapentin, tizanidine[5] and Topamax,[6] which make her sleepy. She testified that Topamax was prescribed in 2013. She stated that her primary physician is Dr. Kevin Joseph at St. Charles Community Health Center. Plaintiff said she has never had epilepsy or seizures and does not know why those conditions are mentioned in some of her medical records. (Tr. 40-41).

In response to questioning by her attorney, who referred to Exhibit 8F of the medical records, plaintiff stated that recent nerve testing indicated she has carpal tunnel syndrome.[7] She testified that, when she walks with her arms at her sides, both hands stiffen and swell, so that she cannot make a fist and finds it difficult to hold a pencil and write. (Tr. 41-42). She said that her hands cramp when she does her daughter's hair and she has to rub her

---

[4] Neurontin (generic name: gabapentin) is used to treat pain from damaged nerves after healing of shingles in adults, and is used in combination with other medicines to treat partial seizures in adults and children. PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/neurontin (visited Aug. 22, 2016).

[5] Zanaflex (generic name: tizanidine hydrochloride) is a muscle relaxer used to reduce the frequency of muscle spasms. Id., http://www.pdrhealth.com/drugs/zanaflex (visited Aug. 29, 2016).

[6] Topamax (generic name: topiramate) is used to treat certain types of seizures and to prevent migraine headaches. Id., http://www.pdr.net/pdr-consumer-monograph/topamax?druglabelid=947&ConsumerId=1541#1 (visited Aug. 29, 2016).

[7] Exhibit 8F (Tr. 602-07) contains five pages of nerve conduction studies on Magee's lower extremities, but does not mention her upper extremities or any diagnosis of carpal tunnel syndrome. Page 6 of Exhibit 8F, which is otherwise blank, contains a statement that the page "was replaced with this page because it referenced another claimant." (Tr. 607). Perhaps the replaced page concerned the other claimant's upper extremities. Magee does not argue that she has carpal tunnel syndrome.

hand to get "my fingers back into place." She stated that her hand problems developed recently. (Tr. 42).

Plaintiff clarified that she fell and went to the emergency room at St. Charles Parish Hospital in September 2012, and that her neck problems began after that. (Tr. 42-43). She said she goes to the St. Charles Parish Hospital emergency room instead of her primary doctor when she thinks her condition is worse. She stated that she had gone to the emergency room three days before the hearing and she last went to Chabert Hospital five to six months earlier. (Tr. 43). She agreed with her attorney's statement that glass was removed from her hand[8] in the emergency room after her fall. (Tr. 44).

Magee stated that she is not certified as a nursing assistant. (Tr. 47). She testified that she is 5 feet 5 inches tall and weighs 228 pounds, which was down from a high of 260 pounds. She said she has changed her eating habits and tries to walk to lose weight, as her doctors recommended. (Tr. 50-51).

C.     Vocational Expert Testimony

A vocational expert, Katrina Virden, testified at the hearing that Magee's former work as a direct support worker, health care, or mental retardation aide, is classified by the Dictionary of Occupational Titles as semi-skilled with an SVP of 6[9] at a medium exertional

---

[8] This is probably mistranscribed. The medical records confirm Magee's testimony that she hit her head on a glass table and that glass was removed from her head, not her hand. (Tr. 258-63).

[9] Specific vocational preparation ("SVP") is "'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" Bayer v. Colvin, 557 F. App'x 280, 284 n.2 (5th Cir. 2014) (quoting U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C. II (4th ed. 1991)). "SVP 2 means 'anything beyond a short demonstration up to and including 1 month;' SVP 3 means 'over 1 month up to and including 3 months;' SVP 6 means 'over 1 year up to and including 2 years'

level.  Virden stated that she did not agree with the SVP of 6 and that she would classify the job at an SVP of 3.  (Tr. 47).

The ALJ posed a hypothetical of a person with plaintiff's age, education and work experience who would be off-task at least 20 percent of the work day in addition to normal breaks.  Virden testified that being off-task for 20 percent of a workday, or 96 minutes, would make the person incapable of sustaining work activity.  (Tr. 48).

The ALJ posed a second hypothetical of someone who can perform light work, with restrictions of never climbing ladders, ropes or scaffolds; can occasionally balance, stoop, crouch, kneel, crawl and climb ramps or stairs; cannot work with moving, hazardous and dangerous machinery, at unprotected heights or in commercial driving; and is limited to simple, repetitive, unskilled work.  (Tr. 48-49).  Virden stated that such a person could not perform Magee's past relevant work, but could perform other jobs available in the national economy, such as cashier, sales/fitting room attendant and fast food worker, which are light and unskilled with an SVP of 2.  (Tr. 49).

Plaintiff's attorney asked whether Virden's answer to that hypothetical would be affected if the person must sleep for one to two hours daily because of medication side effects.  Virden testified that such an individual would not be capable of performing any work.  (Tr. 50).

D.    Medical Evidence

---

and SVP 7 means 'over 2 years up to and including 4 years.'"  Bray v. Comm'r, 554 F.3d 1219, 1230 n.4 (9th Cir. 2009) (Wu, J., concurring) (quoting Dictionary of Occupational Titles, App. C, at p. 1009).

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.   (Tr. 16-18).   I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.   Plaintiff's Appeal

1.   The ALJ did not err by failing to consider a closed period of disability.

Citing Social Security Ruling ("SSR") 82-52, Magee contends that an ALJ must decide whether a medically determinable impairment can be expected to last for a continuous period of twelve months and must present "a specific rationale if he finds that there is a disability of insufficient duration."  Plaintiff's memorandum, Record Doc. No. 13 at p. 5.  Magee argues that the ALJ "did not present the required rationale" and that "the evidence supports at the very least a finding of a closed period of disability from October 11, 2011 through June 24, 2014."  Id.  This argument fails for two reasons.

First, the Commissioner typically awards benefits for a closed period of disability when a claimant experiences medical improvement in a previously disabling condition and becomes able to engage in substantial gainful activity.  Teague v. Astrue, 342 F. App'x 962, 963-64 (5th Cir. 2009) (citing 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(b)(3); Waters v. Barnhart, 276 F.3d 716, 717, 719 (5th Cir. 2002)).  The requirement of SSR 82-52[10] that the ALJ present a specific rationale for denying a closed period of disability

_____

[10]Although the Commissioner's rulings "are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'"  Bryant v. Astrue, 272 F. App'x 352, 356 (5th Cir.

applies only to cases of otherwise <u>disabled</u> claimants, which are "denied on the basis of <u>insufficient duration</u>" of the inability to engage in substantial gainful activity.  SSR 82-52, 1982 WL 31376, at *1, *3 (1989) (emphasis added).  "In considering 'duration,' it is the inability to engage in [substantial gainful employment] because of the impairment that must last the required 12-month period."  <u>Frisby v. Comm'r of Soc. Sec.</u>, No. 13-3119, 2015 WL 1859053, at *5 (W.D. La. Apr. 22, 2015), <u>aff'd</u>, 632 F. App'x 226 (5th Cir. 2016) (citing SSR 82-52; <u>Barnhart v. Walton</u>, 535 U.S. 212, 217-22 (2002) "(the inability to work, not just the impairment upon which it is based, must last 12 months)").  The ALJ did not deny Magee's claim based on insufficient <u>duration</u> of an <u>inability</u> to engage in substantial gainful employment, but because plaintiff has the residual functional capacity to perform work.  The ALJ was not required to present a rationale for not awarding a closed period of disability when she found that plaintiff has no disabling condition.

Second, Magee does not explain why she contends that her alleged closed period of disability would have ended on June 24, 2014.  The only significance of the date in the record is that nerve conduction studies of plaintiff's lower extremities on that date revealed mild bilateral peripheral polyneuropathy[11] of primarily sensory type.  (Tr. 602).  In a similar case, the Fifth Circuit recently disagreed with a plaintiff who argued primarily that the ALJ

---

2008) (quoting <u>Myers v. Apfel</u>, 238 F.3d 617, 620 (5th Cir. 2001)); <u>accord</u> <u>Ramirez v. Colvin</u>, 606 F. App'x 775, 778 (5th Cir. 2015).

[11] Polyneuropathy is

> [a] nontraumatic generalized disorder of peripheral nerves, affecting the distal fibers most severely, with proximal shading (<u>e.g.</u>, the feet are affected sooner or more severely than the hands), and typically symmetrically; most often affects motor and sensory fibers almost equally, but can involve either one solely or very disproportionately . . . .

<u>Stedmans Medical Dictionary</u> (27th ed. 2000), on Westlaw at STEDMANS 709580.

erred by failing to find that she had an open-ended disability and alternatively that the ALJ

erred by failing to consider a closed period of disability.

> [Plaintiff] Hurst posits that even though her May 2011 visit to a physician
> "document[ed] improvement" in her condition, the ALJ should have considered
> whether Hurst was disabled for some twelve-month period ending before that time.
> We disagree. The ALJ considered the entire medical record, including evidence
> relating to visits within the twelve months following the asserted onset of disability,
> in reaching her conclusion [that plaintiff retained the functional capacity to perform
> work].

Hurst v. Colvin, 639 F. App'x 1018, 1023 (5th Cir. 2016) (emphasis added).

The same is true in the instant case. The ALJ carefully considered, weighed and

resolved conflicts in the record evidence. Magee fails to identify substantial evidence that

she was disabled from working for any period of 12 continuous months. Accordingly, this

assignment of error lacks merit.

> 2. The ALJ did not err by failing to analyze Magee's ability to obtain and
> maintain employment.

Citing Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002), and Frank v. Barnhart,

326 F.3d 618 (5th Cir. 2003), plaintiff argues that the ALJ failed to analyze Magee's ability

to obtain and maintain employment. In Watson, the Fifth Circuit

> held that the ALJ erred by failing to determine whether the plaintiff was
> capable not only of obtaining but also maintaining employment. [Watson,
> 288 F.3d at 218]. The [residual functional capacity] rules . . . make clear that
> the [residual functional capacity] is a measure of the plaintiff's capacity to
> perform work "on a regular and continuing basis," and in most cases the
> ability to maintain employment is adequately taken into account in the
> [residual functional capacity] determination. See, e.g., [Perez, 415 F.3d at
> 465; Frank, 326 F.3d at 619]. In decisions following Watson, the Fifth
> Circuit has clearly rejected the idea that an ALJ must in all cases make a
> separate finding that the claimant has the ability to maintain employment.
> See Frank, 326 F.3d at 619.   Any such required extra finding must be

14

> predicated on the claimant having an impairment that waxes and wanes in its
> manifestation of disabling symptoms. See Dunbar v. Barnhart, 330 F.3d 670,
> 671 (5th Cir. 2003); Frank, 326 F.3d at 619.
>
> The Court of Appeals in Frank explained that "Watson requires a
> situation in which, by its nature, the claimant's physical ailment waxes and
> wanes in its manifestation of disabling symptoms." Frank, 326 F.3d at 619.
> Frank gave an example of evidence that might necessitate a separate finding
> of a claimant's ability to maintain employment: "For example, if [the
> Plaintiff] had alleged that her degenerative disc disease prevented her from
> maintaining employment because every number of weeks she lost movement
> in her legs, this would be relevant to the disability determination." Id.

Thornhill v. Colvin, No. 3:14-CV-335-M, 2015 WL 232844, at *7 (N.D. Tex. Jan. 16,

2015) (emphasis added); accord Castillo v. Barnhart, 151 F. App'x 334, 335-36 (5th Cir.

2005) (citing Perez, 415 F.3d at 465; Dunbar, 330 F.3d at 672; Frank, 326 F.3d at 619).

Magee argues vaguely, without identifying any specific evidence, that she has

"mental and physical symptoms that 'wax and wane,'" such that the ALJ was required to

make a separate finding that she can maintain employment. Plaintiff's memorandum,

Record Doc. No. 13 at p. 7. This argument is unsupported by substantial evidence. First,

Magee does not allege, and the medical records do not support, that she has any mental

impairment. Second, her subjective allegations as to her physical impairments are not

substantially supported by the record as a whole.

The ALJ acknowledged that plaintiff has severe impairments of obesity,

osteoarthritis, degenerative disc disease and "sprains and strains–all types" (apparently

referring to plaintiff's back, neck and ankle). As she is required to do, the ALJ thoroughly

considered the medical, testimonial and opinion evidence; resolved any conflicts; found

plaintiff's subjective complaints only partially credible; and concluded that Magee has the

residual functional capacity to perform light work with the limitations in the ALJ's decision. Hurst v. Colvin, 639 F. App'x 1018, 1021 (5th Cir. 2016) (citing Harris v. Apfel, 209 F.3d 413, 417 (5th Cir. 2000)); Byrd v. Comm'r of Social Sec., 368 F. App'x 542, 543 (5th Cir. 2010) (quoting Perez, 415 F.3d at 461); Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

Determining the credibility of Magee's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. Luckey v. Astrue, 458 F. App'x 322, 326 (5th Cir. 2011) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462. The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required. Undheim v. Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31,

1999).   The ALJ in this case explained her reasons for finding Magee only partially credible.  Those reasons are substantially supported by the record evidence that the ALJ cited.

The Fifth Circuit has held that evidence that a claimant has "good days and bad days" does not rise to the level anticipated by Frank and does not require a separate finding of an ability to maintain employment.  Perez, 415 F.3d at 465.  Even a claimant's need for periodic treatment for pain, such as epidural injections, "is simply not sufficient to bring [her] case within the realm of disablement envisioned by the Frank court.  It is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain."  Id.

> [Magee] has not presented any evidence indicating that [s]he could work temporarily at a particular level of exertion but could not sustain work at that level. Nor has [s]he offered any evidence that [her] condition "waxes and wanes" in frequency or intensity such that [her] ability to maintain employment was not adequately taken into account in [her] residual functional capacity determination.

Castillo, 151 F. App'x at 336.  "Absent such evidence, the ALJ was not required to make a specific finding on whether [plaintiff] can maintain employment."  Acosta v. Astrue, 865 F. Supp. 2d 767, 794 (W.D. Tex. 2012) (citing Dunbar, 330 F.3d at 672).  "Only in rare circumstances is an ALJ required to make a separate determination regarding whether a claimant is able to maintain employment. This is not such a case."  Weimer v. Astrue, 284 F. App'x 129, 135 (5th Cir. 2008) (citing Frank, 326 F.3d at 619).

The ALJ incorporated into her residual functional capacity assessment all of the functional limitations that she found credible.  Under established Fifth Circuit law,

Magee's "ability to maintain employment is subsumed in the [residual functional capacity] determination." Barratt v. Astrue, No. 07-51067, 2008 WL 2325636, at *2 (5th Cir. June 6, 2008) (citing Perez, 415 F.3d at 465); accord Weimer, 284 F. App'x at 135-36; Castillo, 151 F. App'x at 335-36; see also Patterson v. Astrue, 324 F. App'x 419, 422 (5th Cir. 2009) (In the case of a plaintiff with diabetes, hypertension, Graves' disease, obesity, impaired vision and bipolar disorder, "[t]he ALJ carefully and thoroughly discussed the evidence presented and evaluated [plaintiff's] ability to maintain employment in light of that evidence" and found that plaintiff had the residual functional capacity to perform work. The ALJ was not "require[d to make] a specific finding that the claimant can hold a job for a significant period of time."); Babin v. Comm'r of Soc. Sec., No. CV 14-3312, 2016 WL 4136475, at *8 (W.D. La. June 23, 2016), report & recommendation adopted, 2016 WL 4150731 (W.D. La. Aug. 3, 2016) (When evidence showed that plaintiff with chronic lumbar pain, degenerative disc changes, herniated disc and peripheral neuropathy improved with medication, she did not meet the Frank test.); Williams v. Colvin, No. 3:14-CV-3680-BH, 2016 WL 1182468, at *8 (N.D. Tex. Mar. 28, 2016) (When medical records reflected that plaintiff was recovering well from heart surgery and "[h]e did not present evidence that his ability to maintain employment was compromised," Frank did not require a specific finding.); Acosta, 865 F. Supp. 2d at 794 (Plaintiff with "migraines of varying frequency" presented no evidence "that her intermittently recurring headaches prevented her from holding a job for long periods of time.").

     Accordingly, this assignment of error lacks merit.

3. **The ALJ did not err by failing to consider the side effects of plaintiff's medication.**

Magee argues that the ALJ "largely ignored" "significant evidence regarding the side effects of [plaintiff's] medications," and that the ALJ should have included the medication side effects in her hypothetical questions to the vocational expert.  Plaintiff's memorandum, Record Doc. No. 13 at p. 7.  However, the only evidence of side effects that Magee cites is her own testimony that her medications make her so sleepy that she needs to take daily naps.

My review of the voluminous medical records[12] revealed no reports of daytime sleepiness as a side effect of plaintiff's medications.  Constipation, weight gain and insomnia were the only side effects Magee reported on three occasions in 2013, but at the same visits she denied other side effects, said she was "content" with her medications and was able to drive without issues.  (Tr. 282, 284, 410).

> Because the medical evidence/reports did not contain any information that the plaintiff suffered from side effects, it was not improper for the ALJ to discredit the plaintiff's testimony about side effects, or to exclude this information from his questioning of the vocational expert. FN22
> FN22 It is logical to assume that if a claimant was suffering significantly from any side effects, the claimant would complain to [her] treating physician.

Wells v. Astrue, No. 07-889-C, 2009 WL 2447819, at *4 & n.22 (M.D. La. Aug. 10, 2009), aff'd, 392 F. App'x 354 (5th Cir. 2010) (citing Salazar v. Chater, 74 F.3d 1236, 1995 WL 783347, at *5 (5th Cir. Nov. 27, 1995)); accord Babin, 2016 WL 4136475, at *6; Rosales

---

[12] Large portions of the records span the irrelevant time period of 1994 to 2001.  (Tr. 437-601).

v. Colvin, No. 4:15-CV-015-Y-BL, 2016 WL 1019673, at *3-4 (N.D. Tex. Feb. 11, 2016),
report & recommendation adopted, 2016 WL 950324 (N.D. Tex. Mar. 14, 2016).

Accordingly, this assignment of error lacks merit.

    4.  The ALJ did not conclude that Magee's receipt of unemployment benefits
and her ability to perform limited household chores mean that <u>she is
capable of working full time.</u>

Magee argues, incorrectly, that the ALJ equated plaintiff's ability to perform
activities of daily living with an ability to perform substantial gainful activity.  The ALJ
never stated that Magee's ability to perform daily activities meant she could engage in
substantial gainful activity.  Instead, the ALJ properly considered (Tr. 17-18) plaintiff's
"daily activities in determining that her impairments were not totally debilitating and did
not prevent her from performing significant work activities."  <u>Jones v. Barnhart</u>, 112 F.
App'x 996, 2004 WL 2634534, at *1 (5th Cir. Nov. 19, 2004) (citing <u>Leggett v. Chater</u>, 67
F.3d 558, 565 n.12 (5th Cir. 1995); <u>Chaparro v. Bowen</u>, 815 F.2d 1008, 1011 (5th Cir.
1987)).  "Indeed, any 'inconsistencies between [plaintiff's] testimony about [her]
limitations and [her] daily activities were quite relevant in evaluating [her] credibility.'"
<u>Casanova v. Astrue</u>, 327 F. App'x 464, 466 (5th Cir. 2009) (quoting <u>Reyes v. Sullivan</u>, 915
F.2d 151, 155 (5th Cir. 1990)).

The Fifth Circuit has routinely affirmed an ALJ's decision to discount a plaintiff's
credibility based on findings that the claimant "can cook, do housework, and drive," <u>Price
v. Astrue</u>, 401 F. App'x 985, 987 (5th Cir. 2010) (citing <u>Leggett</u>, 67 F.3d at 565 n.12), or
"was able to care for his three [school-age] daughters, perform household chores, cut the

grass in small increments, and even walk up to six blocks at a time." Leggett, 67 F.3d at 565; accord Babin, 2016 WL 4136475, at *7 (citing Newton, 209 F.3d at 459; Leggett, 67 F.3d at 565 n.12; Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995)); Smith v. Colvin, No. 12-CV-03290, 2014 WL 11538275, at *8 (S.D. Tex. Oct. 27, 2014), report & recommendation adopted sub nom. Smith v. Astrue (S.D. Tex. Dec. 12, 2014), aff'd sub nom. Smith v. Colvin, 605 F. App'x 443 (5th Cir. 2015) (citing Casanova, 327 F. App'x at 466; Griego, 940 F.2d at 945).

Plaintiff's argument that the ALJ found that Magee retained the ability to work simply because she received unemployment compensation is also incorrect. The ALJ did not make such a finding.  Plaintiff stated in her Disability Report and testified at the hearing that she was laid off because her employer had no more light duty work, not because she was unable to perform such work.  (Tr. 35-36, 161).  The ALJ properly considered Magee's receipt of unemployment benefits as a factor when determining plaintiff's credibility.  (Tr. 19).  Magee testified that she received unemployment compensation after she was laid off until December 28, 2013, more than 14 months after her alleged disability onset date, which necessarily meant that she held herself out as ready and able to work and was required actively to seek work during that time.  Although a claimant's receipt of unemployment benefits does not preclude a finding of disability, "it is appropriate for the ALJ to consider any representations [the claimant] has made to state authorities and prospective employers that he can work."  Knox v. Astrue, 327 F. App'x 652, 656 (7th Cir. 2009) (citing Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005)); accord Thibodeaux v. Astrue, 324 F. App'x

440, 444 (5th Cir. 2009); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing Schmidt, 395 F.3d at 745-46; Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)).  "Applications for unemployment and disability benefits are inherently inconsistent.  There is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work.'"  Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 801 (6th Cir. 2004) (quoting Bowden v. Comm'r, No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999)) (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983)); accord O'Donnell v. Comm'r of Soc. Sec., No. 1:13-CV-436, 2015 WL 5749485, at *8 (W.D. Mich. Sept. 30, 2015) (citing Workman, 105 F. App'x at 801); Moore v. Astrue, No. 5:12-CV-00755-RDP, 2013 WL 1661435, at *7 (N.D. Ala. Apr. 11, 2013) (citing Workman, 105 F. App'x at 801-02; Schmidt, 395 F.3d at 745; Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991)).

In addition, plaintiff's treating orthopedist, Keith Melancon, M.D., released her to return to light duty work January 19, 2012.  (Tr. 224).  On May 21, 2012, based on a functional capacity evaluation, several physical examinations since November 2011, lumbar x-rays and an MRI, Dr. Melancon opined that, at a minimum, plaintiff could return to her past relevant work with the "very reasonable" restrictions of frequent breaks, frequently lifting up to 10 pounds and occasionally lifting and/or carrying up to 20 pounds. Dr. Melancon stated that plaintiff could stand and walk on a regular basis.  Despite Dr. Melancon's findings on physical examination that Magee had some lumbar pain and

tenderness and his diagnosis of lumbar disc degeneration, he assessed her on May 21, 2012 with only a four percent whole body impairment and stated that neither surgical intervention nor future medical care was needed. (Tr. 220). Although plaintiff suffered additional impairments after that date as a result of two separate incidents of falling, in which she injured her head and her ankle, respectively, all of her objective cervical, lumbar, knee and ankle tests and physical examinations revealed mild to, at most, moderate findings. No doctor ever placed additional restrictions on Magee after Dr. Melancon's opinion or stated that she is unable to work.

Yondell Moore, M.D., is a medical consultant who reviewed plaintiff's medical records at the agency level on October 3, 2013. Dr. Moore found that Magee's allegations of functionally limiting symptoms were not substantiated by the medical evidence alone and that plaintiff's symptoms were being managed with medications. Dr. Moore determined that plaintiff had the residual functional capacity to lift and/or carry 10 pounds frequently, lift and/or carry 20 pounds occasionally, and sit, stand and/or walk for about 6 hours in an 8-hour day, with certain postural limitations and no environmental limitations. (Tr. 57-60). The ALJ afforded great weight to Dr. Moore's opinions, which are substantially supported by the medical evidence, although the ALJ actually imposed more severe postural limitations than Dr. Moore had assessed and added some environmental restrictions. (Tr. 15, 19). The record as a whole thus substantially supports the ALJ's credibility and residual functional capacity findings.

<u>CONCLUSION</u>

23

The ALJ did not err by failing to consider a closed period of disability, to analyze Magee's ability to obtain and maintain employment, or to consider the side effects of plaintiff's medication.  Substantial evidence supports the ALJ's findings that Magee's receipt of unemployment benefits and activities of daily living, considered in conjunction with the entire record, undermined her credibility and that plaintiff has the residual functional capacity to perform jobs that are available in the national economy.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[13]

New Orleans, Louisiana, this ____15th____ day of September, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[13] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.